**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DERRICK ROUNDTREE,

*Plaintiff,*

v.

OFC. D. SANTIAGO, *et al.*,

*Defendants.*

Civil Action No. 20-20744 (RMB) (EAP)

**OPINION**

**BUMB,** Chief District Judge.

**THIS MATTER** comes before the Court on the Motion for Summary Judgment filed by Defendants Officer Daniel Santiago, Officer Harmon Murphy, and Officer Timothy Volov (collectively, the "Officers"). (ECF 103.) Plaintiff Derrick Roundtree opposes the motion. (ECF 105.) The Court has considered the parties' submissions[1] without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).

---

[1]Cited herein as: Defendants' Memorandum of Law in Support (ECF 103-1 ("Defs.' Br.")); Defendants' Statement of Undisputed Material Facts (ECF 103-2 ("SUMF")); the Certification of Kerri E. Chewning, Esq. with attached Exhibits A-N (ECF 103-3 ("Chewning Certif.")); the Certification of John C. Falvey, Esq. (ECF 103-4 ("Falvey Certif.")); Plaintiff's Brief in Opposition (ECF 105 ("Pl.'s Opp'n")); Plaintiff's Response to Defendants' Statement of Material Facts and Counterstatement of Material Facts (ECF 105-1 ("Pl.'s RSOMF" and "Pl.'s Countstmt.," respectively)); Defendants' Reply (ECF 106 ("Defs.' Reply")); and Defendants' Response to Plaintiff's Counterstatement (ECF 107 ("Defs.' Resp. Countstmt.")).

Plaintiff, an inmate in the custody of the New Jersey Department of Corrections ("NJDOC"), alleges that the Officers used excessive force against him during a January 1, 2019 altercation at South Woods State Prison, in violation of the Eighth Amendment. The Officers move for summary judgment on three independent grounds: (1) that Plaintiff's claim is barred in its entirety by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff was found guilty of disciplinary infractions arising from the same incident and that adjudication has never been overturned; (2) that no reasonable jury could find the force used was unconstitutionally excessive; and (3) that, regardless, the Officers are entitled to qualified immunity.

For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** the motion. *Heck* bars Plaintiff's claim to the extent it rests on the Officers' initial decision to bring Plaintiff to the ground — conduct inextricably bound up with the disciplinary finding, never vacated, that Plaintiff committed an attempted assault and refused a lawful search order. *Heck* does not, however, bar Plaintiff's distinct theory that the Officers continued to apply force — a further application of oleoresin capsicum ("OC") spray and repeated closed-fist strikes — after Plaintiff was already on the ground. Because genuine disputes of material fact surround that later use of force, summary judgment is unavailable on the merits or on qualified immunity as to that theory, and the case will proceed to trial on that narrower basis.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed this action *pro se* on December 31, 2020, together with an application to proceed *in forma pauperis* ("IFP"). (ECF 1.) On June 3, 2021, the Court screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), and 42 U.S.C. § 1997e(c)(1), permitting Plaintiff's Eighth Amendment excessive-force claim to proceed against Officers Santiago, Stade, Murphy, Echevarria, Volov, and Carney, dismissing Plaintiff's remaining claims without prejudice, and administratively terminating the case pending resolution of Plaintiff's IFP application. (ECF 2, 3.) The Court granted Plaintiff's renewed IFP application and reopened the case on December 16, 2021. (ECF 6.)

Plaintiff filed an Amended Complaint on April 12, 2022, asserting an Eighth Amendment excessive-force claim (Count I) and a First Amendment retaliation claim (Count II) against the same six officers. (ECF 10.) The Court appointed pro bono counsel on April 12, 2023, for the limited purpose of identifying Defendants for service, (ECF 14, 15), and, after Defendants answered the Amended Complaint on August 21, 2023, (ECF 31), directed on September 6, 2023 that counsel continue his appointment for the remainder of the case, (ECF 32). The parties then proceeded

through fact discovery, including the depositions of Plaintiff and each of the responding officers.[2]

On November 5, 2025, the parties stipulated to dismiss Count II in its entirety and to dismiss Count I as to Defendants Carney, Echevarria, and Stade. (ECF 97.) As a result, only Officers Santiago, Murphy, and Volov remain as defendants, and only Plaintiff's Eighth Amendment excessive-force claim remains at issue. Defendants first moved for summary judgment on November 7, 2025, (ECF 98), but withdrew that motion without prejudice by consent, subject to refiling within forty-five days, (ECF 102). Defendants refiled the instant motion on January 16, 2026. (ECF 103.) Plaintiff opposed on February 3, 2026, (ECF 105), Defendants replied on February 10, 2026, (ECF 106), and Defendants responded to Plaintiff's counterstatement of facts on February 11, 2026, (ECF 107). The motion is now ripe.

**B. Factual Background**[3]

Plaintiff has been in NJDOC custody since a December 1996 conviction for carjacking and weapons offenses. (SUMF ¶ 1.) At the time relevant to this action

---

[2]Officers Santiago and Echevarria were deposed on December 3, 2024; Officers Volov and Murphy on December 12, 2024; and Officer Stade on December 13, 2024. Plaintiff was deposed on March 6, 2025, and Officer Forsythe on August 19, 2025. (Chewning Certif. Exs. B-D, F, H-I.)

[3]Because Defendants move for summary judgment, the Court recites the facts in the light most favorable to Plaintiff as the non-moving party, noting where the parties agree and where they do not. Undisputed facts are drawn from Defendants' Statement of Undisputed Material Facts and Plaintiff's Response; disputed facts are drawn from

Plaintiff was housed at South Woods State Prison; he is currently housed at East Jersey State Prison. (SUMF ¶¶ 4-5.)

**1. The Pill-Call Incident**

On January 1, 2019, Plaintiff reported to the pill-call line to receive his prescribed medication. (SUMF ¶ 6.) Inmates receiving medication must show the supervising officer their open hands and mouth, confirming that they swallowed the medication rather than "cheeked" it.[4] (SUMF ¶ 9.) Plaintiff testified that he complied with this procedure, showing Officer Jonathan Forsythe his open hands and mouth before leaving the building. (SUMF ¶¶ 7-8; Pl.'s RSOMF ¶¶ 7-8.) Officer Forsythe testified that Plaintiff did not show his hands or mouth, (SUMF ¶ 10 (citing Forsythe Dep. at 25:19-23)), but he also acknowledged that he had no independent recollection of Plaintiff acknowledging him or the instruction at all. (Pl.'s RSOMF ¶ 10 (citing Forsythe Dep. at 27:15-24)). It is undisputed that Plaintiff then left the building; Plaintiff disputes only Defendants' characterization that he "stormed out." (SUMF ¶ 12; Pl.'s RSOMF ¶ 12.)

---

Plaintiff's Counterstatement of Material Facts and Defendants' Response thereto, and are identified as such.

[4] "Cheeking" refers to the practice of concealing medication in the mouth — typically between the cheek and gum, or under the tongue — rather than swallowing it, so that the medication may later be removed and hoarded, shared, sold, or otherwise diverted from its prescribed use. See, e.g., Tamburello et al., *AAPL Practice Resource for Prescribing in Corrections*, 46 J. Am. Acad. Psychiatry & L. Supp. S2, S4 (2018) (defining cheeking as "not swallowing the medication, typically with an intention to use it not as intended by the prescriber").

### 2. The Confrontation with Officer Santiago

Officer Santiago, who had heard raised voices from inside the building, approached Plaintiff outside and told him to show his hands. (SUMF ¶¶ 13-14.) What happened next is sharply disputed. Defendants maintain that Plaintiff refused to comply and instead assumed an aggressive "boxer's" stance, clenching and raising his fists. (SUMF ¶ 15 (citing Santiago Dep. at 37:6-38:8).) Plaintiff denies that characterization, (Pl.'s RSOMF ¶ 15), and the officers' own testimony is notably inconsistent on the point. When pressed at his deposition to describe the "aggressive stance," Officer Santiago testified that Plaintiff had "one foot in front of the other" with his hands "at his sides," and, when asked directly whether Plaintiff had raised his hands toward his face, answered "No." (Pl.'s Countstmt. ¶¶ 8-9 (quoting Santiago Dep. at 41:10-17, 40:10-12).) Officer Volov, who arrived at approximately the same time and likewise described an "aggressive stance," could not identify anything specific that Plaintiff did to create that impression when asked to elaborate. (Pl.'s Countstmt. ¶ 13 (quoting Volov Dep. at 17:24-18:4) ("Q: ... Do you specifically remember how he moved or what he did to leave you with that impression? A: No.").) Officer Murphy's testimony conflicts with both: he testified that Plaintiff had "his hands up by his face with clenched fists." (Pl.'s Countstmt. ¶ 17 (quoting Murphy Dep. at 17:8-15); Defs.' Resp. Countstmt. ¶ 17 (acknowledging the testimony but denying that it creates a disputed issue of material fact).)

Plaintiff testified that he said nothing to Santiago, did not throw a punch, and did not threaten him. (Pl.'s Countstmt. ¶¶ 2-4 (citing Santiago Dep. at 59:6-23, 42:17-19).) He testified that he was taken to the ground within seconds of the encounter, before he had any real opportunity to respond: "As soon as I step out all I hear is let me see your hands ... My hands were down like this. The next thing you know I hear (witness utters sounds). That's all I heard after that. Everything went black." (Pl.'s RSOMF ¶ 14 (quoting Roundtree Dep. at 36:7-17).) Officer Santiago's own estimate of the encounter — less than ten seconds — is materially consistent with that account. (Defs.' Resp. Countstmt. ¶ 10 (citing Santiago Dep. at 59:16-23).)

### 3. The Code 33 and the Ground-Phase Force

Santiago brought Plaintiff to the ground, and a Code 33 was called. (SUMF ¶¶ 17, 20.) Officer Volov arrived and deployed two bursts of OC spray. (SUMF ¶ 22.) Officer Murphy arrived and helped bring Plaintiff fully to the ground by grabbing him at the waist. (SUMF ¶¶ 25-26.)

What happened once Plaintiff was on the ground is likewise sharply disputed, and lies at the heart of this motion. Defendants contend that Plaintiff continued to actively resist — "throwing punches and kicking," "flailing," and "yelling out for inmates to help him" — necessitating closed-fist strikes by Officers Santiago and Murphy to gain compliance. (SUMF ¶¶ 18-19, 27.) Plaintiff, by contrast, testified that once he was on the ground he attempted to comply by lying down and placing his hands behind his back. (Pl.'s Countstmt. ¶ 16 (citing Roundtree Dep. at 50:5-15).)

Notwithstanding that testimony, the record — including the Officers' own deposition testimony — reflects that Officer Volov deployed two additional one-second bursts of OC spray directly to Plaintiff's face after Plaintiff was already on the ground, (Pl.'s Countstmt. ¶ 15 (citing Volov Dep. at 24:1-3); *but see* Defs.' Resp. Countstmt. ¶ 15 (denying, and asserting that Volov testified he was not sure whether he deployed additional bursts)); that Officer Santiago struck Plaintiff multiple times with a closed fist after Plaintiff was on the ground, (Pl.'s Countstmt. ¶ 12 (citing Santiago Dep. at 48:17-49:2); *see also* SUMF ¶ 19 (citing Santiago Dep. at 48:17-25)); and that Officer Murphy struck Plaintiff in the ribs multiple times with a closed fist, (Pl.'s Countstmt. ¶ 19 (citing Murphy Dep. at 19:24-20:2); *see also* SUMF ¶ 27).

By the time Officer Echevarria arrived on scene — responding from a location less than 500 feet away — Plaintiff was already handcuffed. (SUMF ¶ 31.) Echevarria then helped escort Plaintiff to a holding cell. (SUMF ¶ 32.)

**4. Aftermath and Medical Treatment**

Plaintiff was evaluated by medical staff and sent to Cooper Hospital based on his reported claims of left-eye blindness and left-side pain. (SUMF ¶ 43.) Contemporaneous NJDOC records documented a superficial scratch to the left side of Plaintiff's nose and abrasions to both elbows. (Chewning Certif. Ex. G at 1.) A subsequent rib x-ray was normal, revealing no fracture, dislocation, or pneumothorax. (SUMF ¶ 44.) After several follow-up visits, an ophthalmologist concluded that Plaintiff's claimed blindness was unsupported by any objective finding and noted that

Plaintiff was "malingering." (SUMF ¶ 45; Pl.'s RSOMF ¶ 45 (admitting the medical record contains this notation but denying that Plaintiff was in fact malingering).)

NJDOC's Special Investigations Division ("SID") separately investigated Plaintiff's allegations of staff misconduct; that investigation noted that no surveillance cameras covered the area of the incident and ultimately concluded that investigators were "not able to substantiate the allegations made by Inmate Roundtree." (SUMF ¶ 56.) No disciplinary action was taken against any of the Officers. (SUMF ¶ 57.)

**5. Plaintiff's Disciplinary Adjudication**

As a result of the incident, Plaintiff was charged with an attempted-assault infraction (*.002) and a refusal-to-submit-to-a-search infraction (*.708), both dated January 1, 2019; he received a separate *.708 charge for an unrelated incident on January 9, 2019. (SUMF ¶¶ 46-47; *see* N.J. Admin. Code tit. 10A, § 4-4.1(a) (listing prohibited acts subject to disciplinary sanction).) A hearing officer conducted a single hearing on all three charges on January 14, 2019, found Plaintiff guilty of each, and imposed an aggregate sanction of 725 days' administrative segregation (365 days for the attempted-assault charge and 180 days for each refusal charge), together with loss of commutation time and recreation privileges; the segregation sanctions were initially imposed to run consecutively. (SUMF ¶¶ 48-50.) Plaintiff's internal administrative appeal was denied the following day, upholding the hearing officer's decision and all sanctions in full. (SUMF ¶ 51; Falvey Certif. Ex. 1 at DOC0000183.)

Plaintiff separately appealed to the New Jersey Appellate Division, which, by order dated April 3, 2020, remanded the matter to NJDOC for further consideration. (SUMF ¶ 52.) On remand, the administrative segregation sanctions were modified to run concurrently rather than consecutively, reducing the time Plaintiff actually spent in segregation. (SUMF ¶ 53.) Plaintiff has admitted, for purposes of this motion, that there is no record that the underlying adjudication of guilt — as distinct from the consecutive-versus-concurrent structure of the sanction — was ever vacated or overturned. (SUMF ¶ 54; Pl.'s RSOMF ¶ 54 (admitted)). In September 2025, Plaintiff moved before the Appellate Division to enforce the 2020 remand order; that motion was denied as moot on October 16, 2025. (SUMF ¶¶ 58-59.)

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the record, including the parties' Local Civil Rule 56.1 statements, in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on the pleadings but must identify specific record evidence establishing a genuine issue

for trial; unsupported assertions of counsel are not evidence for that purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. DISCUSSION

### A. Heck v. Humphrey

Under *Heck v. Humphrey*, a plaintiff may not recover damages under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of (a prior) conviction or sentence," unless that conviction or sentence has already been invalidated. 512 U.S. 477, 487 (1994). The Supreme Court has extended this "favorable termination" rule to prison disciplinary proceedings that affect the duration of a prisoner's confinement, reasoning that such a challenge is the functional equivalent of a challenge to a conviction or sentence and must proceed, if at all, through habeas corpus. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). Because Plaintiff's disciplinary sanction here included the loss of commutation time in addition to administrative segregation, (SUMF ¶ 48), *Heck*'s rationale is squarely implicated to the extent a judgment for Plaintiff would necessarily imply that the disciplinary adjudication — never vacated — was invalid.

The inquiry does not end there. To determine whether *Heck* bars a particular excessive-force claim, a court must "compare the elements and factual circumstances of the prior underlying conviction with the plaintiff's excessive force claim to determine whether an excessive force judgment in the civil action would necessarily invalidate" the disciplinary or criminal adjudication. *Wood v. Borough of Woodlynne*,

735 F. Supp. 3d 526, 531 (D.N.J. 2024) (citing *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997)). *Heck* "usually applies" where "the allegedly unlawful seizure is temporally or conceptually indistinct from the crime for which the plaintiff was convicted" — the classic case being an "uninterrupted physical struggle" in which the plaintiff's injuries and the resulting conviction for resisting arrest or assault arise from the very same, continuous use of force. *Id.* at 532 (citing *Grande v. Keansburg Borough*, 2013 WL 2933794, at *5 (D.N.J. June 13, 2013)). But "the mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim." *Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010); accord *Nelson*, 109 F.3d at 145-46; *Lora-Pena v. FBI*, 529 F.3d 503, 506 (3d Cir. 2008) (per curiam). The inquiry is "highly context-specific" and requires "a close evaluation of the factual record" to determine whether the claim is "temporally and conceptually distinct from the underlying offense," or whether instead "the quantum of force used may have been disproportionate to the conduct implicated by the underlying conviction — even in cases involving resisting arrest and assaulting officers." *Jefferson v. Lias*, 21 F.4th 74, 86 (3d Cir. 2021); *Wood*, 735 F. Supp. 3d at 532.

Defendants urge a broader rule: that any account of the incident Plaintiff might offer, if inconsistent with the disciplinary finding in any respect, is barred in its entirety. For this proposition Defendants rely principally on a single district-court decision, since reversed on appeal (albeit on unrelated exhaustion grounds), that did not cite or apply the Third Circuit's decision in *Nelson* — decided three years earlier. *See*

*Concepcion v. Morton*, 125 F. Supp. 2d 111, 123 (D.N.J. 2000), rev'd on other grounds, 306 F.3d 1347 (3d Cir. 2002) (reversing and directing dismissal for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a), without reaching the district court's *Heck* analysis). Read literally, *Concepcion*'s formulation would bar an excessive-force claim any time a prisoner was convicted of resisting or assaulting an officer during the same encounter in which the challenged force was used — a result the Third Circuit has consistently declined to adopt, both before and after *Concepcion* was decided. *See Nelson*, 109 F.3d at 145-46; *Garrison*, 376 F. App'x at 278; *Lora-Pena*, 529 F.3d at 506. The Court follows that controlling authority, and with it the temporally-and-conceptually-distinct framework applied in *Wood*.

Applying that framework, this case divides into two episodes.

**1. The Initial Takedown**

The first episode — Officer Santiago's decision to bring Plaintiff to the ground, (SUMF ¶ 17), and Officer Volov's initial two bursts of OC spray, (SUMF ¶ 22) — is not temporally or conceptually distinct from Plaintiff's disciplinary adjudication. Plaintiff was found guilty, in a hearing that has never been vacated, of an attempted assault and of refusing a lawful order to submit to a search. Plaintiff suggests the refusal-to-search charge might instead trace only to his earlier, separate interaction with Officer Forsythe inside the pill-call building, leaving the later Santiago encounter unadjudicated. The record forecloses that reading: it was Santiago, not Forsythe, who issued the disciplinary charge, and the charging paperwork itself — as Santiago read

it into the deposition record — identifies its basis as the "(c)onfrontation with SCPO D. Santiago." (Santiago Dep. at 72:20-74:10 (Chewning Certif. Ex. D).) Consistent with that charging document, Santiago's own testimony confirms that his purpose in taking Plaintiff to the ground was to head off an assault he perceived as imminent from that same confrontation. (SUMF ¶¶ 15-16 (quoting Santiago Dep. at 44:3-18).) A jury verdict crediting Plaintiff's account of that opening exchange in full — that he said nothing, made no threatening gesture, and was struck and taken to the ground without any provocation whatsoever, (Pl.'s Countstmt. ¶¶ 2-4, 10) — would necessarily imply that Plaintiff did not commit the attempted assault or refuse the search order of which he stands convicted. That is precisely the "uninterrupted physical struggle" scenario in which *Heck* applies. *See Grande*, 2013 WL 2933794, at *5. *Heck* therefore bars Plaintiff's excessive-force claim to the extent it rests on the theory that the initial takedown and first application of OC spray were unprovoked or otherwise unconstitutional.

Plaintiff's suggestion that the record is too indefinite to support any preclusive effect does not alter this conclusion. Plaintiff emphasizes that Defendants' certifications do not fully document what transpired after the Appellate Division's 2020 remand. But Plaintiff has himself admitted, in his Local Civil Rule 56.1 counterstatement, each of the facts necessary to establish that his underlying guilt was never disturbed: that he was found guilty of the January 1 charges, that his internal appeal was denied, that the Appellate Division remand resulted only in a change from consecutive to concurrent service of his segregation sanction, and that there is no

record that the adjudication of guilt itself was ever vacated or overturned. (SUMF ¶¶ 46-54; Pl.'s RSOMF ¶¶ 46-54 (admitted).) A party's own Local Civil Rule 56.1 admissions establish the undisputed facts for purposes of a summary judgment motion; argument in a brief cannot manufacture a factual dispute that the party's own admissions foreclose.[5]

**2. The Ground-Phase Force**

The second episode is different. Once Plaintiff was on the ground, his evidence — which the Court must credit at this stage — is that he was attempting to comply, not to resist: he testified that he tried to lie down and place his hands behind his back. (Pl.'s Countstmt. ¶ 16 (citing Roundtree Dep. at 50:5-15).) On that record, a finding that the Officers' subsequent conduct — a second, additional application of OC spray to Plaintiff's face and repeated closed-fist strikes to his body and ribs, (Pl.'s Countstmt. ¶¶ 12, 15, 19) — was excessive would not necessarily imply that Plaintiff's disciplinary conviction, which rests on his conduct in refusing Officer Santiago's search order and in the confrontation that led to his takedown, was invalid. Put differently, even accepting as conclusively established that Plaintiff committed an attempted assault and refused a search order at the outset of the encounter, that adjudication does not establish — and does not foreclose a jury from finding otherwise — that Plaintiff

[5]Plaintiff's brief separately suggests that the Falvey Certification is insufficiently documented and self-serving. Whatever force that argument might otherwise have, it does not create a genuine dispute here, because Plaintiff's own Rule 56.1 admissions — not merely the Falvey Certification — establish the relevant facts.

continued to resist once he was on the ground and the Officers had the numerical and physical advantage. This is precisely the scenario that courts applying *Heck* in this District have recognized as falling outside the doctrine's bar: if the plaintiff alleged that the officer "engaged in excessive force after [the subject] was already subdued," the case would "fit the scenario where *Heck* would not apply to bar an excessive force claim." *Grande*, 2013 WL 2933794, at *5; *see also Robinson v. Andrews*, 2014 WL 4662237, at *6-7 (D.N.J. Sept. 18, 2014) (*Heck* does not bar a claim of excessive force occurring after a plaintiff has been subdued, notwithstanding a related, unreversed assault conviction); *Wood*, 735 F. Supp. 3d at 531-32 (collecting cases). Nor is it dispositive that Plaintiff's account of compliance is itself disputed by the Officers' testimony that Plaintiff continued to "fight," "kick," and "flail": that dispute is a merits question for the jury, not a basis to apply *Heck* as a matter of law, because — unlike the "uninterrupted physical struggle" in *Grande* — crediting Plaintiff's version of the ground-phase encounter does not require rejecting any element of his disciplinary conviction.

Accordingly, *Heck* does not bar Plaintiff's excessive-force claim to the extent it is premised on the force the Officers applied after Plaintiff was brought to the ground.

### B. Eighth Amendment Excessive Force — The Ground-Phase Claim

The Eighth Amendment prohibits the application of force "maliciously and sadistically to cause harm," as opposed to force applied "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting

*Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). That standard governs because Plaintiff was a convicted and sentenced prisoner throughout the events at issue; the different, objective-reasonableness standard that governs a pretrial detainee's excessive-force claim has no application here. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A serious injury is not required; the inquiry "must be driven by the extent of the force and the circumstances in which it is applied," not by the resulting injury, because "*de minimis* injuries do not necessarily establish *de minimis* force." *Smith v. Mensinger*, 293 F.3d 641, 648-49 (3d Cir. 2002); *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). Courts weigh five factors: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the injury inflicted; (4) the extent of the threat to safety reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the response. *Smith*, 293 F.3d at 649 (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

Applying those factors to the surviving, ground-phase theory, genuine disputes of material fact preclude summary judgment. As to the need for force and the threat reasonably perceived, Plaintiff testified that once he was on the ground he attempted to comply, lying down and placing his hands behind his back. (Pl.'s Countstmt. ¶ 16 (citing Roundtree Dep. at 50:5-15).) Defendants dispute that account: they rely on the Officers' testimony that Plaintiff continued to throw punches and kick, called out for other inmates to help him, and refused to give up his hands to be cuffed. (SUMF ¶¶ 18-19, 27.) If a jury credits Plaintiff's version, the Officers faced no continuing threat once he was on the ground. That conclusion does not depend on crediting Plaintiff

alone: Officer Volov testified that he and other officers had already forced Plaintiff face down on the ground, (SUMF ¶ 24), yet Officer Murphy — responding to the same Code 33 — described Plaintiff as still "squared off," testified that he personally had to drag Plaintiff down to the ground, (SUMF ¶¶ 25-26), and, in that same account, recalled that Plaintiff was "still throwing fists," (SUMF ¶ 27). A jury could reasonably question how a plaintiff already pinned in the prone position for cuffing was, in the same telling, still squared off and throwing punches — an inconsistency in the Officers' own account that, independent of Plaintiff's testimony, is itself sufficient to preclude summary judgment on this factor.

As to the relationship between the need for force and the amount used, Plaintiff's account — a second OC application directly to his face, (Pl.'s Countstmt. ¶ 15 (citing Volov Dep. at 24:1-3)), and multiple closed-fist strikes to his body and ribs, delivered by two officers while he was already on the ground, (Pl.'s Countstmt. ¶¶ 12, 19 (citing Santiago Dep. at 48:17-49:2; Murphy Dep. at 19:24-20:2)) — if believed, would permit a jury to find the response disproportionate to any continuing threat. And while the extent of Plaintiff's documented injuries was modest — a normal x-ray, (SUMF ¶ 44), and superficial abrasions, (Chewning Certif. Ex. G at 1) — that fact does not "necessarily establish *de minimis* force," *Smith*, 293 F.3d at 648, and does not entitle Defendants to judgment as a matter of law where the nature of the alleged force itself (repeated strikes and chemical spray against an inmate already on the ground) is capable of supporting a finding of malicious or sadistic intent. *See id.* at 649-50 (reversing summary judgment for defendants where a handcuffed inmate alleged he

was punched and thrown into walls, notwithstanding only minor documented injuries); *Brooks*, 204 F.3d at 105-06 (same, where an inmate alleged a beating while handcuffed). Each of these disputes bears directly on whether the Officers acted in a good-faith effort to restore discipline or maliciously and sadistically to cause harm, and it is for a jury, not the Court, to resolve them.

Defendants respond that Plaintiff cannot avoid summary judgment by contending, after the fact, that he did not intend to resist, because the relevant question is whether the Officers' contemporaneous perception was objectively reasonable. (Defs.' Reply at 8.) That framing identifies the question a jury must answer; it does not resolve the motion in Defendants' favor. A jury crediting Plaintiff's testimony that he offered his hands to be cuffed rather than continuing to resist, (Pl.'s Countstmt. ¶ 16), could reasonably conclude that no objectively reasonable officer would have perceived him as continuing to pose a threat while on the ground with three officers already present, (SUMF ¶¶ 20, 25-26). Summary judgment is therefore denied as to the merits of Plaintiff's ground-phase excessive-force theory.[6]

[6]Defendants also argue that the statement of inmate Jermaine Thompson, recorded in the SID report, is inadmissible hearsay that cannot be considered on summary judgment. The Court need not resolve that evidentiary dispute, because the genuine issues of material fact identified above arise independently from the Officers' own deposition testimony and from Plaintiff's testimony, without regard to Thompson's account.

### C. Qualified Immunity

Qualified immunity shields government officials from liability unless (1) the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) that right was clearly established at the time of the official's conduct. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021); *James v. New Jersey State Police*, 957 F.3d 165, 168 (3d Cir. 2020) (courts may address either prong first). Both prongs are in play here, and both turn on the same disputed facts identified above.

As to the first prong, the analysis in Part III.B applies equally: whether the Officers violated the Eighth Amendment during the ground-phase encounter depends on whether Plaintiff was attempting to comply or continuing to resist, a question a reasonable jury could resolve in Plaintiff's favor. As to the second prong, it was clearly established well before January 2019 that subjecting a restrained or non-resisting inmate to further force — closed-fist strikes and the application of a chemical agent — can violate the Eighth Amendment even absent serious injury, regardless of whether the inmate's own conduct earlier in the same encounter justified an initial use of force. *See Smith*, 293 F.3d at 649-50 (denying qualified immunity where a handcuffed inmate was allegedly punched, kicked, and thrown into walls); *Brooks*, 204 F.3d at 105-06 (reversing summary judgment where a plaintiff, though "shackled at the time," alleged a subsequent beating, because "the extent of his threat to staff would not have been great"). *Smith* and *Brooks* gave fair warning that an inmate's earlier resistance does not license continued force once that resistance has stopped: what makes force permissible

under the Eighth Amendment is the threat it responds to, not the inmate's conduct minutes earlier. A reasonable officer confronting Plaintiff's account of the ground-phase encounter — on the ground with three officers present, (SUMF ¶¶ 20, 25-26), hands offered for cuffing, (Pl.'s Countstmt. ¶ 16) — would have understood that repeated closed-fist strikes and additional OC spray no longer served the disciplinary purpose *Whitley* and *Hudson* protect. If a jury credits Plaintiff's account that he was attempting to comply when Officer Volov deployed additional OC spray and Officers Santiago and Murphy struck him, that conduct would fall within this line of clearly established authority.

Qualified immunity remains a question of law for the Court, but that legal question cannot be answered on this record without first resolving the same disputed facts that preclude summary judgment on the merits. "(W)hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury," and summary judgment is inappropriate until they are. *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006). The Court will therefore submit the disputed historical facts to the jury — principally, what Plaintiff was doing when the Officers applied the ground-phase force — using special interrogatories if necessary, and will then apply the clearly-established-law standard to the jury's findings to resolve qualified immunity as a matter of law. *See Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF 103) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Eighth Amendment excessive-force claim is **DISMISSED WITH PREJUDICE** to the extent it rests on the Officers' initial use of force to bring Plaintiff to the ground, including Officer Volov's first two applications of OC spray; that theory is barred by *Heck v. Humphrey*. The claim **SURVIVES**, and the motion is **DENIED**, to the extent it rests on the force applied after Plaintiff was brought to the ground — Officer Volov's additional application of OC spray and the closed-fist strikes by Officers Santiago and Murphy — because genuine disputes of material fact preclude summary judgment on the merits and on qualified immunity as to that theory.

An accompanying Order will issue.

Dated: **August 26, 2026**

s/*Renée Marie Bumb*
Renée Marie Bumb
Chief United States District Judge